## CHALMERS v. ROMINE.
### Patent Appeal No. 3049.

Court of Customs and Patent Appeals.
Jan. 3, 1933.

Arthur W. Davidson, of Washington, D. C., and George H. Willits, of Detroit, Mich., for appellant.

Cushman, Bryant, Darby & Cushman, of Washington, D. C. (John J. Darby and C. Willard Hayes, both of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention as to all of the counts, Nos. 1 to 9, inclusive, to the senior party, Robert T. Romine.

The invention relates to a method of, and an apparatus for, loading sheet metal in cars or other conveyances for transportation, and is sufficiently described in counts 1, 3, 5, and 7. The counts read:

"1. The herein described method of loading sheet metal consisting of positioning the sheets forming a pack or bundle with the sheets in upright position, supporting the sheets on wood members in direct engagement with the edges of the sheets, and bracing the pack at opposite ends to resist displacement thereof in the car."

"3. The herein described method of loading sheet metal on the floor of a freight car for shipment, consisting in arranging the sheets in a pack with the planes of the sheets extending transversely to the plane of the car floor and with the edges of the sheets frictionally engaged to resist relative movement of the sheets, and maintaining the pack together as a unit."

"5. In an apparatus of the class described for packing sheet metal on the floor of a freight car for shipment with the sheets resting on their edges, the combination of means frictionally engaging the edges of the sheets to resist relative movement thereof, and means for maintaining the sheets together in a unit."

"7. In an apparatus for packing sheet metal in a pack or packs on the floor of a freight car for transportation with the sheets of the pack resting on their edges, the combination of means having a relatively softer surface than the sheets engaging the edges of the sheets, and means engaging the pack for supporting the sheets in position to rest on their edges."

The interference is between appellee's application, No. 118,061, filed June 23, 1926, in which counts 1 to 7, inclusive, originated, and

appellee's patent, No. 1,644,278, issued October 4, 1927, on an application filed August 11, 1926, in which counts 8 and 9 originated, on the one hand, and appellant's application, No. 186,924, filed April 27, 1927, on the other.

Each of the tribunals below held, and it is not controverted here, that appellee's earlier application, filed June 23, 1926, discloses the subject-matter of all of the counts, and that appellee is entitled to that date for constructive reduction to practice.

The primary issue before the court involves a construction of the counts in issue, not for the purpose of determining the right of either of the parties to make them, but rather for the purpose of determining whether certain activities of appellant in 1923 may properly be considered in determining the question of priority of invention.

It appears from the record that, in 1923, appellant, then employed by the Chevrolet Motor Company, was engaged in packing automobile parts, made of sheet metal, such as "cowls, hoods, quarter panels, door panels, and back panels," for exportation to foreign countries. Those articles, due to their contour, were packed in nested relation in shipping cases. Appellant contends that the method then employed by him in packing automobile parts supports the counts in issue, and that he is entitled to a date as early as 1923 for conception and reduction of the invention to practice.

The tribunals below disagreed with appellant's contention.

The Primary Examiner stated his views as follows:

"Chalmers' activity during 1923 and 1924 appears to have been confined to articles which, although made of sheet metal, were not in the form of flat sheets. Boxes of such articles ready for shipment are shown in the junior party's exhibits A and B. The articles are nested and do not appear to be capable of relative sliding movement. It is not thought, therefore, that the engagement of these articles with the box or bearing strips would serve any such purpose as does the contact of flat sheets with wooden members. It is to be noted that Chalmers (Q.25) states that the strips which "acted as bearing surfaces for the edges of the sheets" did not prevent the shifting of the sheets so much as the outside container. This seems to indicate that the frictional engagement of the edges of the metal elements with the wood was not relied on to hold the former in place, and, while he states that the metal edges were raw it is not clear that they were so arranged as to cut into the wood to retard sliding.

"The practice of preparing metal articles of all sorts for shipment by crating them in wood or packing them in wooden boxes is, of course, notoriously old and it is clear that, in such an arrangement, there would be a frictional engagement between the metal and the wood of the container. It seems apparent, therefore, that the present counts must not be construed so broadly as to cover the mere shipping of sheet metal in a wooden container. It is thought that the invention in issue is limited to the shipment of flat metal sheets having a tendency to slide, and to the arrangement of the sheets in such a manner that their friction with a softer material prevents or materially retards this sliding.

"These conditions were not satisfied by Chalmers' earlier shipments, firstly, because the metal shipped was not in the form of flat sheets, and secondly, because it is not clear that the edges of the metal had such contact with the wood as is specified by the counts."

In affirming the decision of the Primary Examiner, the Board of Appeals stated that:

"The principal object of laying a pack of nested shaped sheet metal articles on its side is to enable each article to bear its own weight so as to avoid the objection of having the accumulated weight of the pack injuriously rest on the bottom articles, which would result if the stack should be placed on end. In such case prevention of relative sliding is not a problem as it does not arise.

"We think there is no occasion to regard the claims even taken in their broadest terms as including more than 'sheets' as included therein. The term 'sheets' is not considered to fairly include shaped articles such as automobile fenders, cowls, and hoods. Particularly in the metal trades it has the well established meaning of the sense in which it is obviously and unmistakably used in these applications."

At the time of the oral arguments in this court, it was conceded by counsel for appellant that, if appellant's activities in 1923 do not support the counts in issue, appellee was the first to conceive and the first to reduce the invention to practice, and is, therefore, entitled to an award of priority. Counsel for appellant insists, however, that the counts in issue are not ambiguous, and should be interpreted as broadly as their language will reasonably permit; that, as they are not limited to flat sheets of steel, such limitation cannot, under the law, be read into them; and that, if broadly construed, they read directly

upon the activities—the packing of automobile parts—of appellant in 1923.

Appellant's application relates to a method of, and an apparatus for, loading sheet metal for transportation. His specification contains a statement to the effect that the sheet metal referred to therein was steel "rolled at the steel mill to the proper thickness and cut into sheets of the desired size," and that such sheets were "oiled and loaded in cars for shipment to the manufacturer, large quantities being used in the manufacture of automobile bodies. It is in regard to the *shipping of this sheet steel* that the present invention relates." (Italics ours.) Furthermore, appellant specifically denied in his testimony that his application related to the shipment of automobile parts. In this connection, he said: "X-Q. 154. Then when you filed your application involved in this interference, you had in mind that the patent you would obtain would cover the shipping of fabricated or partially fabricated sheet steel such as under-pans and rear quarter panels and hoods, shipped in boxes on edge? A. I did not." He further testified that it was early in 1926, probably January of that year, when it first occurred to him to devise a method and apparatus for loading sheet metal of the kind referred to in his application.

The terms "sheet metal," "sheet," and "plate" are defined, respectively, as follows:

"Metal in sheets or thin plates." The Century Dictionary and Cyclopedia.

"Metal made into sheets, usually by rolling, as sheet iron, sheet brass, sheet steel, etc., not over ¼ inch in thickness." Funk & Wagnalls New Standard Dictionary.

"Sheet, * * * c. A broad, thinly expanded portion of metal or other substance; *iron and steel manuf.*, a portion less than about a quarter of an inch (sometimes one eighth) in thickness, a portion having above this thickness being designated a *plate*." Webster's New International Dictionary.

"1. A very thin and broad piece of any substance; * * * 2. A broad, flat surface; * * *" Funk & Wagnalls New Standard Dictionary.

"Plate, 1. A flat, or nearly flat, and relatively thin, piece of any material, orig. only of metal * * *." Webster's New International Dictionary.

We think it is clear that the problem confronting appellant in 1923 (the loading of automobile parts) differed greatly from that confronting him in 1926 (the loading of sheet metal), when it first occurred to him to devise a method and apparatus for the loading of the latter material.

We are of opinion, considering his application and his testimony, that appellant's alleged invention relates exclusively to the loading of sheet metal in its condition as manufactured in the steel mill, and not to such material when fabricated or partially fabricated into automobile parts.

Whether the involved invention should be limited to sheet metal, as hereinbefore defined, need not here be determined. However, the involved counts ought not be given a construction broader than the invention disclosed by the parties, which, in our opinion, was not intended by either to relate to the loading of automobile parts, or other articles, capable of being packed in nested relation.

In view of the fact that the invention, as described in the specifications of the parties, was limited to sheet metal in its condition as manufactured in the steel mill, that is, to a mere material in the form of sheets for use in the manufacture of automobile parts, and other articles, we are of opinion that the counts in issue must likewise be so limited. We conclude, therefore, that appellant's activities in 1923—the loading of automobile parts—do not support the counts in issue, and that he is not entitled to that date for conception and reduction of the involved invention to practice.

In view of the facts hereinbefore stated, appellee is entitled to an award of priority of invention.

The decision of the Board of Appeals is affirmed.

Affirmed.